**Alexandria**

KARL C. BROOM

v.

DONNA I. BROOM

No. 1551-90-4

Decided December 22, 1992

COUNSEL

J. Patrick McConnell (Kelly A. Sweeny; Odin, Feldman & Pittleman, P.C., on briefs), for appellant.

David L. Duff (Duff, McLaughlin & Heacock, P.C., on brief), for appellee.

OPINION

**BAKER, J.**—This is an appeal from a decree of divorce entered by the Circuit Court of Fairfax County (trial court). Karl C. Broom (husband) alleges (1) that in making the monetary award the trial court erroneously failed to consider separate funds husband contributed to the marriage, and (2) the trial court erred in directing husband to pay Donna I. Broom (wife) one-half of the sum contained in an Individual Retirement Account (IRA) and $37,400 for attorney's fees and costs she incurred in the prosecution and defense of the divorce proceedings.

Wife filed a cross-appeal asserting (1) that the trial court erred when it failed to give her credit for separate funds she contributed to the acquisition of the marital residence, and (2) further erred when it reduced the initial award of spousal and child support.

The trial court's analysis of the evidence considered and its finding of facts relevant to the issues presented by this appeal are as follows:

The parties hereto were married on July 22, 1972 and separated on February 13, 1988. There are four children of the marriage; Ian Edward Broom, born October 13, 1967 and Kevin Joel Broom, born May 19, 1970, children of the Husband by a former marriage who were adopted by the Wife, both of whom are now emancipated, and Patrick Iselin Broom, born March 3, 1976, now 14 years of age and Christopher Cooke Broom, born December 8, 1973, now 16 years of age, born of the marriage. The younger

children are in the custody of the Wife. Christopher suffers from cystic fibrosis and requires special therapy therefor.

Husband is 47 years of age, the Wife is 41, both of the parties are college graduates, and both are in good physical and mental health, although the Wife testified she had surgery in 1986, a complete hysterectomy in 1989 and is chronically tired.

The Husband has been employed by the CIA since September 12, 1970 and now earns an average annual gross salary of $60,480.00. The Husband also served approximately two years in the military prior to becoming employed by the CIA. The Wife was also employed by the CIA at the time of the marriage but terminated that employment to care for the children of the parties and the marital home. The wife did, however, carry on a catering service out of the marital home for a time to earn additional monies to be applied to the welfare of the family. At the time of hearing the wife was employed by the Marriott Corp. as a banquet manager at an approximate gross annual salary of $17,644.00.

The parties have reached agreed stipulations, set forth in the Complainant Wife's exhibits nos. 1 and 2, that provide, *inter alia*, as follows:

a. The marital residence, jointly owned, has a current fair market value of $1,000,000.00 and is not encumbered by any Deeds of Trust.

b. A sale of the marital residence to a third party would necessitate commissions and other costs of sale totalling eight percent (8%), or $80,000.00.

c. The wife has marital furniture, furnishings and other household goods in her possession at the marital residence with a value $16,250.00 greater than possessed by the husband at his residence.

d. The husband agrees to continue to maintain the existing levels of major medical and catastrophic health insurance coverage for the benefit of Patrick and Christopher, for so long as allowable under the terms of the policy.

e. The husband agrees to pay, each year, all deductibles and co-insurance amounts under the aforesaid major medical and catastrophic health insurance, up to the qualifying total for catastrophic "cap" coverage, not to exceed $2,000.00 in any given year.

f. Funds were used from the children's custodial accounts toward construction of the marital residence; therefore, the four (4) children have an interest in the value of the marital residence in the amount of $46,920.00.

g. The parties each agree to be responsible for one-half (1/2) of the orthodontia costs for Christopher and Patrick.

h. The husband admits that he is guilty of legal desertion, as provided in Section 20-91(6) of the 1950 Code of Virginia, as amended, and as alleged in Count I of the Bill of Complaint.

i. With respect to Section 20-107.3(E) (5) of the 1950 Code of Virginia, as amended, both parties agree that, during the course of this marriage, the conduct and actions of each of them joined to contribute to the eventual dissolution of the marriage; however, the husband acknowledges that his conduct and actions were the primary cause of the breakup of the marriage.

The Husband's pension, up to the time of separation of the parties, was earned over a period of service of 19.40 years. The parties were married during 15.56 years of his 19.40 years of service and the marital share of the husband's pension based on the proportion of years married is 15.56/19.40 or 80.2% up to the time of separation. The expert witness for the Wife found the present value of the marital share of the husband's pension to be $99,215 and the expert witness for the husband, using a slightly different discount rate and a retirement age two years later for the Husband, found the value to be $73,631.

The Wife's father, retired Admiral Donald Iselin, testified that he and his wife had contributed $90,000 in cash payments plus $56,000 in value of his own labor and $8,000 in value of his wife's labor toward the construction of the jointly owned marital home of the parties; a total of $154,000.00 in value. He further testified that $45,000 of the cash amount was forgiven by him. Although Admiral Iselin testified that his unforgiven contributions were a gift to his daughter only, the evidence supports the

conclusion that these contributions were intended to be a gift to both of the parties hereto and the Court so finds.

The first home the parties lived in was acquired by the Husband in 1971 and deeded to the parties jointly in 1972 by the Husband following the marriage of the parties. No evidence was introduced concerning the value or equity in that home at the time it was deeded jointly to the parties and the Court cannot therefore make any determination thereof. The evidence did show, however, that the proceeds of the sale of that house, some $84,000.00, was contributed to the acquisition of the present marital home. The Court finds that all of the $84,000.00 was marital property. The evidence is in conflict as to the amount each of the parties contributed from their separate funds toward acquisition of the marital home. The Court finds that the Wife contributed a total of $138,075.00 of her separate funds directly to the acquisition of the marital home. The Court further finds that the Husband contributed $9,000.00 directly from his separate funds and that the balance of cash contributions from the parties are contributions from marital funds. The Court finds that both parties contributed personal labor to the building of the marital home, the Wife contributing more than the Husband because of the time constraints of his career employment and participation in the children's sports activities.

The Husband, in addition to contributing his earnings from his employment to the well being of the family introduced evidence that he contributed monies from unearned sources, gifts and inheritances, excluding any contribution toward acquisition of the marital home, in the approximate amount of $319,000.00 during the course of the marriage. The Husband was also active in the sports activities of the children and helped, to the extent he was able, in the care of the marital home. The Wife, in addition to her earnings which she contributed to the well being of the family, was the principal caretaker of the marital home and the children.

The Husband introduced evidence that, since the separation of the parties, he has paid joint household bills in the approximate amount of $12,828.00 and had debts, as of the hearing, in excess of $105,000.00. Although the Husband argues that the $105,000.00 is "family related debts", the Court notes that over 99% of the $105,000.00 appear to have been incurred after the separation of the parties and only $4,792.00, payable to or for the

parties' sons, appears to be family related. The Court finds that the balance is the individual debt of the Husband. The Wife introduced evidence that, since the separation of the parties, she has paid some $15,000.00 in real estate taxes and $2,200.00 in insurance on the marital home together with some $1,700.00 in other funds toward maintenance of the marital home; a total of some $18,900.00. The Wife also introduced evidence that she is indebted to her father in the amount of $29,400.00 plus interest borrowed since the separation of the parties for living expenses.

The Wife has incurred attorney's fees and costs, up to the time of the hearing, of approximately $37,385.00 and the Husband has incurred attorney's fees and costs of approximately $38,000.00.

The Court finds, in addition to the Husband's pension from his employment, the property listed on the attached schedule to be marital property for the purposes of equitable distribution; identified, titled, encumbered, of gross value, and of net equity as indicated on the schedule.

In its decree, the trial court incorporated by reference the foregoing findings and, relevant to this appeal, ruled as follows: First, the court granted custody of the infant children born of the marriage to wife and directed husband to pay for emergency medicals incurred on their behalf, $400 per month for their support and $500 per month spousal support to wife. These awards were less than the amounts the trial court initially considered as proper. The trial court explained its reason for the reduction as related to the substantial medical expenses incurred on behalf of the children's orthodontic needs and for Christopher's cystic fibrosis treatment. Upon review of the record and facts found by the trial court, we find no error in those awards.

Second, the court ordered that husband pay to wife the sum of $37,400 as partial defrayal of counsel fees and costs. The amount of counsel fees to be awarded is a matter for the exercise of the sound discretion of the trial court and its award will not be disturbed on appeal in the absence of proof of an abuse of that discretion. *Ingram v. Ingram*, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976); *Kaufman v. Kaufman*, 7 Va. App. 488, 500, 375 S.E.2d 374, 380 (1988). Here, the record does not support husband's assertion that the trial court abused its discretion in making the award of fees and costs.

■ Third, the trial court ordered that the marital residence be sold and the net proceeds be distributed as follows:

1. $14,720 each to Ian Edward Broom and Kevin Joel Broom, adult children of the parties;

2. $14,720 to wife as custodian and for the benefit of Christopher Cooke Broom; and $2,760 to wife as custodian and for the benefit of Patrick Iselin Broom, each of these beneficiaries being minor children of the parties; and

3. that the remainder be distributed equally to husband and wife on the condition that husband make the following further payments to wife:

(a) $100,000 as a monetary award pursuant to § 20-107.3 and the counsel fees and costs of $37,400.

Husband asserts that in making the monetary award the trial court "failed to consider equally the contributions of both parties to the marriage." He argues that no evidence shows that the trial court considered husband's contributions to the daily well-being of his family before and after the parties separated. Wife asserts that the trial court failed to give her full credit for her contributions to the acquisition of the marital residence. The burden is on the party appealing to point out the error in the decree and to show how and why it is wrong. *Kempsville Meadows, Inc. v. Schwemley*, 211 Va. 117, 117, 176 S.E.2d 428, 428 (1970) (per curiam), cited in *Kaufman*, 7 Va. App. at 499, 375 S.E.2d at 380. In a letter to counsel, incorporated by reference in the decree appealed from, the trial court stated that it had considered all the factors set forth in Code § 20-107.3. The trial court referenced that husband had asserted that in addition to contributing his employment earnings, husband had made contributions from other sources valued at $319,000. It is apparent that while not accepting husband's testimony in toto, the trial court did consider it. The court also considered husband's testimony that he had actively engaged in the children's sports activities and helped with the children. The court noted similar evidence presented by wife as to her contributions.

■ We find that the parties have failed to show that the trial court did not consider the matters alleged in their respective briefs. As we said in *Kaufman*, Virginia has no presumption favoring an equal division of marital property. *Id.* at 497, 375 S.E.2d at 379. The monetary

award must be based upon the equities of the parties and the chancellor is authorized to weigh the equities and make an appropriate award. *Id.*

> Unless it appears from the record that the chancellor has abused his discretion, that he has not considered or has misapplied one of the statutory mandates, or that the evidence fails to support the findings of fact underlying his resolution of the conflict in the equities, the chancellor's equitable distribution award will not be reversed on appeal.

*Smoot v. Smoot,* 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987); *see also Ellington v. Ellington,* 8 Va. App. 48, 56, 378 S.E.2d 626, 630 (1989). The judgment of the trial court is presumed to be correct and the party who asserts the contrary is required to overcome the presumption by record proof. *See Mack v. Commonwealth,* 177 Va. 921, 929, 15 S.E.2d 62, 65 (1941), cited in *Kaufman,* 7 Va. App. at 499, 375 S.E.2d at 380. We find no abuse of the chancellor's discretion to grant the monetary award and hold that neither party had sustained its burden to show that the trial court failed to consider the evidence presented by the parties as to their respective contributions.

The final issue presented by this appeal is whether the trial court erred when it ordered husband to pay one-half of the value of his IRA within thirty days from August 24, 1990, the date the final decree of divorce and equitable distribution award was entered. Husband argues that IRAs are pension funds established to provide funds upon retirement from employment and, therefore, husband's IRA account should be treated the same as a pension fund created for employment and which is payable only upon retirement.

In relevant part, Code § 20-107.3(G)(1) requires that, in addition to the other equitable distribution awards provided for in that Code section, the trial court "may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time." Husband argues that this Court has held that IRA accounts are the same as a pension and, therefore, asserts that the trial court is not authorized to require any payment be made on account of the IRA fund until payments are received by the account owner. We disagree.

Husband cites *Kaufman* in support of his argument that this Court has declared an IRA to be a pension. His reliance on that case is misplaced. In *Kaufman*, we were asked only to determine the valuation dates, not the character of the respective funds. There, the parties did not dispute the trial court's classification of the funds and the case did not resolve whether an IRA is a pension within the meaning of Code § 20-107.3(G). While several of our cases have referred to IRAs, none have held that such accounts are to be treated as pensions, profit-sharing or deferred compensation as contemplated by the General Assembly when that Code section was enacted or subsequently amended.

"[T]he IRA does not lend itself to facile labeling." *Johnson v. Johnson*, 113 Idaho 602, 603, 746 P.2d 1061, 1062 (1987). It is a device by which a present tax advantage is given by the government as an inducement to save. No employment service is required to enjoy the benefits of such accounts. *See* 26 U.S.C.A. § 408(a) (West Supp. 1992) (Individual Retirement Accounts). An IRA does not require retirement of the individual owner as a condition to current use of the funds contained in the account. Continued employment or attainment of a given age does not affect the right to withdraw IRA funds. An IRA differs from a savings or other investment account only by the limitation on the annual amount that may be contributed and the tax treatment to the account owner. A pension, on the other hand, has been defined by this Court as follows:

> A pension is a retirement benefit paid regularly, with the amount of such based generally on length of employment and amount of wages or salary of pensioner. It is deferred compensation for services rendered.

*Robinette v. Robinette*, 10 Va. App. 480, 485, 393 S.E.2d 629, 632 (1990) (citation omitted). We hold that an IRA is not a pension, profit-sharing or deferred compensation within the meaning of Code § 20-107.3(G)(1), and is subject to present equitable distribution where the evidence, as here, discloses it was created with marital funds.

In his brief, husband asserts that when he withdraws his IRA, after payment of penalty and taxes, wife will receive approximately two-thirds of the value of the IRA. The trial court did not order husband to "withdraw" any funds from the IRA account. Payment could be made from any source husband chose, and the record discloses that other methods of payment were available to husband.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Benton, J., and Moon, J., concurred.