COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Annunziata and
          Humphreys
Argued at Alexandria, Virginia


GLENN A. MARSTON AND
 JOANNE MARSTON
                                   MEMORANDUM OPINION* BY
v.   Record No. 1336-01-4          JUDGE ROSEMARIE ANNUNZIATA
                                         JANUARY 22, 2002
FAIRFAX COUNTY DEPARTMENT OF
 FAMILY SERVICES


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                 Arthur B. Vieregg, Judge

          Glenn A. Marston, pro se.

          (Anne Wren Norloff, on brief), for appellant
          Joanne Marston.  Appellant Joanne Marson
          submitting on brief.

          James P. Fisher, Associate Counsel to County
          Attorney (David P. Bobzien, County Attorney;
          Andrew J. Kersey, Associate Counsel to
          County Attorney, on brief), for appellee.

          Francis G. McBride, Guardian ad litem for
          the children.


     Glenn A. Marston (Mr. Marston) and Joanne Marston[1] (Mrs.

Marston) (appellants) appeal the decision of the Circuit Court

of Fairfax County terminating their parental rights to three of

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Joanne Marston died while this appeal was pending, which
does not abate the appeal.  Code § 8.01-20.  However, the issues
she presents are moot and will not be addressed.

their children.  For the reasons that follow, we affirm the trial court's decision.

## I.

## Background

"Upon appellate review, we must review the facts in the light most favorable to the party prevailing below."  Richardson v. Richardson, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999). Joanne and Glenn Marston are the biological parents of Xenia, born February 9, 1992; Nicholas, born April 12, 1993; and Nathaneal, born July 28, 1995.  On September 28, 1998, appellants' neighbor, Clyde Collins, called the Fairfax County Police to report a continuing pattern of child abuse and neglect by the Marstons.  Collins testified that he often heard loud arguments, screaming, and crashing sounds from the appellants' home.  On at least one occasion, he overheard Mr. Marston state, "I'm going to knock your fucking head off."  He observed the children outside, unsupervised and inappropriately dressed for the weather.

Officer Michael Deane responded to Collins' complaint. Upon entering appellant's home, the odor of feces and urine caused him to immediately retreat.  He also noted that the home was dirty, cluttered, littered with trash, and infested with insects.  He referred the matter to Child Protective Services (CPS).

On September 30, 1998, CPS worker Elizabeth Hernandez responded to the home but no one was there. She returned on October 5, 1998, but Mr. Marston permitted her to view only a portion of the home. The next day, Nathaneal, then age three, was admitted to Fairfax Hospital with a serious bacterial ("staph") infection causing his skin to decompose upon touch. Hernandez finally viewed the entire home and took pictures on October 9, 1998. After a staff meeting, the Fairfax County Department of Family Services assigned Sally King, a foster care social worker, to manage the case.

On October 13, 1998, the Department filed petitions alleging that the children were abused and neglected. Six days later, King obtained an emergency removal order from the juvenile and domestic relations district court (J&DR court) and took the children into custody. The court also ordered that: (1) the Marstons undergo psychological evaluations and therapy; (2) the Marstons successfully complete parenting classes; (3) each of the children have a medical examination; (4) each of the children have a psychological and developmental evaluation; (5) the Marstons sign releases to permit monitoring of their compliance; and (6) the Marstons cooperate with home-based services. On November 19, 1998, the Marstons agreed to these recommendations and stipulated that the children were neglected within the meaning of Code § 16.1-228(1).

In December 1998, the Department prepared foster care plans with the goal that the children return to the Marstons in March 1999. The Department provided the services ordered by the J&DR court, but the Marstons did not cooperate. Despite the Marstons' unsatisfactory progress, re-unification of the children with the Marstons continued to be the goal of the July 1999 foster care plans.

Because the Marstons had not achieved the desired goals by March 1999, as projected, the court continued the matter to October 29, 1999. On October 29, appellants had still not complied with the plan. Although the children had been in foster care beyond the 12-month limit imposed by statute, the matter was set for another hearing on April 7, 2000.

Notwithstanding this lack of progress, the Department permitted the children to return to the Marston home on a trial basis in February 2000. Several Department employees testified that the Marstons' pattern of neglect continued during this five-month trial period. The Marstons attributed their inability to parent to teachers, therapists, and Department employees. They became angry, refused to accept responsibility for their behavior and made little progress.

The Department filed a petition seeking termination of parental rights, and the J&DR court scheduled a termination hearing for October 2000. The Department and home-based social

workers changed their focus from counseling to observing the progress of the Marstons.

On July 28, 2000, CPS received a complaint that Nicholas had a bruise on his forehead. CPS workers and the police went to the Marstons' home. The workers observed the bruise, red marks on his arm and upper thigh, and broken glass behind and on Nicholas' bed. CPS removed all three children from the home.

At the time of the trial, each of the Marstons' three children suffered from psychological problems. Xenia, nine years old at the time, suffered from depression and anxiety, and required psychotropic medications. She had an attention deficit, resulting in academic problems. Her teacher testified that during the period when she had returned to her parents' home, she came to school in dirty clothes, was very emotional, and not alert. Nicholas, seven years old at trial, required special education and psychotropic medication due to emotional disabilities characterized by kicking, biting and hitting. Dr. Jennifer Rashap, a licensed clinical psychologist, opined that Nicholas required a safe, secure, and nurturing home environment. She testified that these needs were not being met at the Marston home. Nathaneal, five years old at the time of trial, received psychological therapy for emotional problems.

After two years of failed efforts to return the children to the Marstons, the J&DR court terminated their parental rights to all three children on October 19, 2000. The Marstons appealed

- 5 -

to the circuit court, which, upon a de novo hearing, entered an order terminating the Marstons' parental rights pursuant to Code § 16.1-283(B).  It is from this ruling that the Marstons appeal.

## II.

### Analysis

#### A.  Threshold Issues

##### i.  Lack of Jurisdiction

Because the Marstons have been unable to locate a petition seeking termination of their parental rights in the court files, they contend that none was filed and that the trial court, therefore, did not have jurisdiction to terminate their rights. See Code § 16.1-283(A) (providing that a court may terminate the residual parental rights of parents "if the petition specifically requests such relief"); Fredericksburg Dept. of Soc. Servs. v. Brown, 33 Va. App. 313, 322, 533 S.E.2d 12, 16 (2000) ("In the absence of . . . a petition [seeking termination], the parents' residual parental rights could not be terminated.").  We disagree.

Our standard of review requires that we presume the judgment of the trial court to be correct, Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992), and sustain its finding unless it is plainly wrong or without evidentiary support.  Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986).  The Marstons bear the burden of proving that the totality of the evidence does not justify the conclusion that a

- 6 -

petition seeking termination was filed.  See Carter v.

Thornhill, 19 Va. App. 501, 509, 453 S.E.2d 295, 300 (1995).

In this case, the circuit court found that the Department

filed a petition seeking termination of the Marstons' parental

rights.  The order terminating the Marstons' parental rights

explicitly stated that its trial was pursuant to "the

petition(s) for termination of the parental rights of Joanne

Marston and Glenn Marston . . . ."[2]

The trial court's conclusion is supported by the record.

The parties' conduct before the court evidences the existence of

a petition seeking termination in the file.  Before the J&DR

court, Mr. Marston filed a motion to quash the "complaint" in

which he specifically referred to the "Petition for the

Termination of Residual Parental Rights."  Furthermore, the

circuit court noted, in its letter opinion, "[t]he parties

stipulated at the beginning of the hearing in [circuit court]

that all necessary summonses and notices had been served or

provided."  This finding has never been challenged by the

Marstons.  Indeed, Mrs. Marston's counsel, before the circuit

court, agreed that "the summons or notice clearly state the

---

[2] Furthermore, the JD&R court terminated the Marstons'
parental rights by order dated October 19, 2000, implicitly
finding subject matter jurisdiction.  See Broom, 15 Va. App. at
504, 425 S.E.2d at 94 (finding that appellate court must presume
the judgment of the trial court to be correct).

consequences of the termination of residual parental rights."
In short, the record contains credible evidence that the
Department filed a petition seeking termination of the Marstons'
parental rights, and the absence of a petition in the file does
not negate that conclusion.  See Wagner Enterprises v. Brooks,
12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991) (holding that
where credible evidence supports the findings of the trier of
fact, evidence to the contrary is of no consequence).
Accordingly, we will not disturb the circuit court's finding
that the case was brought by a petition for termination of
parental rights.

### ii.  Violation of Code § 16.1-283(C)

Appellants contend that the case should be dismissed
because the Department was involved in this case in excess of
twelve months in violation of Code § 16.1-283(C)(2).[3]  However,
our consideration of this contention is barred because
appellants failed to make this argument to the trial court.
Rule 5A:18.

---

[3] Code § 16.1-283(C)(2) provides, inter alia, that parental
rights may be terminated if:

> The parent or parents . . . have been
> unwilling or unable within a reasonable
> period of time not to exceed twelve months
> from the date the child was placed in foster
> care to remedy substantially the conditions
> [of neglect] . . . .

(Emphasis added).

- 8 -

B.  Sufficiency of the Evidence to Terminate Parental Rights

The trial court terminated appellants' parental rights pursuant to Code § 16.1-283(B).  The Marstons contend that the Department did not prove by clear and convincing evidence that "it is not reasonably likely that the conditions which [sic] resulted in such neglect can be substantially corrected or eliminated to allow the child's safe return to his parents within a reasonable period of time," as required for termination.  Code § 16.1-283(B)(2); see Lowe v. Dept. of Public Welfare of Richmond, 231 Va. 277, 280-81, 343 S.E.2d 70, 72 (1986).[4]  Specifically, they challenge the trial court's findings that: (1) the evidence constituted a prima facie case of the conditions of Code § 16.1-283(B)(2), pursuant to subsections (B)(2)(a) and (c); (2) the Department provided the required statutory services to address the neglect; and (3) the Marstons did not substantially eliminate and correct the conditions that led to removal of the children.  Upon consideration of the evidence in the record, we find each argument to be without merit.

---

[4] Appellants do not challenge the trial court's findings, required for termination pursuant to Code § 16.1-283(B), that termination was in the best interest of their children or that the children had been neglected.

- 9 -

### i. Prima Facie Evidence: Code § 16.1-283(B)(2)(a) and (c)

Code § 16.1-283(B)(2) provides, inter alia, that proof that the parents suffer from a mental or emotional illnesses with such severity that there is no reasonable expectation that either of them will be able to care for their children, see Code § 16.1-283(B)(2)(a), or that the parents, without good cause, have not responded to or followed through with reasonable rehabilitative efforts, see Code § 16.1-283(B)(2)(b), constitutes prima facie evidence of the conditions of Code § 16.1-283(B)(2). The trial court found that the evidence presented by the Department satisfied each of these subsections, that the Marstons did not rebut this prima facie case, and that, therefore, the evidentiary requirements of Code § 16.1-283(B)(2) had been met. On appeal, we will not disturb these findings unless they are plainly wrong or without evidentiary support. See Roanoke City Dept. of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 894 (2001).

The evidence that both parents suffer from severe mental illnesses that prevent them from taking care of their children is undisputed. Code § 16.1-283(B)(2)(a). Mrs. Marston suffers from chronic depression, a mixed personality disorder, and an unspecified personality disorder. Claire Laurenza, a psychiatric nurse, testified that Mrs. Marston exhibited dependency, passive/aggressive traits, avoidance, and traits of

- 10 -

borderline personality disorder, such as an inability to return to an emotional baseline after confrontation of problems with anger. Laurenza opined that Mrs. Marston's prognosis was not good.

Mr. Marston suffers from an unspecified personality disorder characterized by aggressive/passive traits, paranoia, and narcissism. Dr. Jennifer Rashap, a licensed clinical psychologist, testified that Mr. Marston distrusts people, procrastinates, avoids situations, irrationally believes others treat him malevolently and that he is superior to, and not subject to the same rules as, others. She testified that those suffering from a similar disorder are often unable to make progress in treatment. Left untreated, her "expectation is that the condition will remain present and chronic." Mary Chilcutt, a licensed therapist, opined that Mr. Marston's prognosis and the possibility of his becoming a better parent were poor.

The evidence also supports the trial court's finding that the Marstons failed to respond to and follow through with appropriate, available and reasonable rehabilitative efforts. Code § 16.1-283(B)(2)(c). Mr. Marston slept during the parent nurturing classes, and Mrs. Marston was disinterested and non-participatory. Mr. Marston's therapist testified that he benefited little from therapy because he tended to blame others and refused to accept responsibility. Mrs. Marston's psychiatric nurse testified that she failed to cooperate during

- 11 -

treatment, often cancelled sessions, and stated that the only reason she attended the sessions was because she was court ordered to do so. In April 2000, Mrs. Marston refused further psychological services.

Accordingly, the evidence met the presumptions of both Code § 16.1-283(B)(2)(a) and (c). Moreover, the contrary evidence presented by the Marstons does not compel a different result. See Wagner Enterprises, 12 Va. App. at 894, 407 S.E.2d at 35 (holding that contrary evidence in the record is of no consequence if credible evidence supports the findings of the trier of fact). The trial court, therefore, properly concluded that the Marstons were not reasonably likely to remedy the conditions of neglect so as to allow the children to return within a reasonable period of time. Code § 16.1-283(B).

### ii. Statutory Services to Address Neglect

We also find the Marstons' claim that the Department failed to provide the statutorily required services to address the neglect of the children meritless. See Code § 16.1-283(B)(2) (providing, inter alia, that "the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care"). The evidence clearly demonstrates that the Department provided (1) developmental assessments of the children; (2) a "Parent Nurturing Program" between July and

- 12 -

October 1999; (3) home-based counseling on parenting, discipline, nutrition and home upkeep; (4) psychological therapy for the Marstons and the three children; (5) transportation to and from therapy and the children's residence; (6) temporary housing and assistance with obtaining subsidized housing; and (7) medical services for the children.  Accordingly, we will not disturb the trial court's finding that the Department provided the required services.

### iii.  Elimination of Conditions that Led to Neglect

The Marstons contend that they fully remedied the conditions that led to the initial removal of the children and that the trial court, therefore, erred in finding that "it is not reasonably likely that the conditions which resulted in . . . neglect . . . can be substantially corrected or eliminated . . . ." Code § 16.1-283(B)(2).[5]  Specifically, appellants maintain that they had vastly improved the condition of their home, and fed, washed, dressed, and otherwise cared for their children.

----

[5] Mrs. Marston also argues that the trial court improperly found that her obesity rendered her physically unable to care for her children.  At trial, the court stated that "Cheryl Weitz, a licensed social worker . . . noted . . . that Mrs. Marston's obesity hampered her ability to parent the children." However, in its letter opinion, it did not find that Mrs. Marston was physically unable to care for her children or rule on Mrs. Marston's objection.  Therefore, we will not consider this argument on appeal. See Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 489 (1998) (holding that where the trial court does not rule on an appellant's objection, "there is no ruling for us to review on appeal").

The evidence in the record, however, is directly contrary. By July 2000, the appellants had not eliminated or corrected the conditions that led to the initial determination that they neglected their children, a condition to which they stipulated in October 1998. During the five-month trial period where the children resided with the Marstons, Department employees observed overflowing trash, dirty dishes piled in the sink, children eating food off the floor, food on the floor and sofa, a cluttered kitchen table, filthy bathrooms, and inappropriate yelling at, and supervision of, the children. Furthermore, two schoolteachers testified that the children came to school dirty, hungry and tired. The evidence, therefore, provided ample basis from which the trial court could conclude that the Marstons had not eliminated or corrected the circumstances resulting in the neglect of the children.[6]

---

[6] The Marstons argue that because they stipulated only to their children's "neglect" and the J&DR court based its removal order on such "neglect," the trial court's consideration of "abuse" in its determination of whether the conditions leading to "neglect" were remedied was error. See Code § 16.1-283(B)(2). We disagree that the court premised its finding on evidence of abuse. In its fifteen page letter opinion, the court made one passing reference to the Marstons' "verbal abuse" of their children and one other reference to the children's "unhealthy, unsafe, and abusive circumstances." However, a review of the comprehensive and thoughtful opinion by the court makes clear that the trial judge premised his finding that the conditions leading to neglect could not be substantially remedied within a reasonable period of time solely on the conditions underlying the parties' stipulation to, and the trial court's finding of, neglect.

The J&DR court based its initial determination of neglect on a range of conditions, including, but not limited to, the

## C. Additional Claims by Mr. Marston

In addition to incorporating by reference Mrs. Marston's allegations, Mr. Marston alleges the trial court erred: (1) by characterizing the initial placement of his children in foster care as "a voluntary relinquishment of parental custody"; and (2) by refusing to allow his oldest child, Xenia, to testify.[7] We disagree.

We fail to see the relevance of his first argument. Whether the children's placement in foster care is labeled a "court commitment" or a "voluntary relinquishment," the placement, to which appellants stipulated, satisfies the first statutory requirement for terminating parental rights. See Code § 16.1-283(B) (providing that parental rights may be terminated where, inter alia, the children were "placed in foster care as a result of (i) court commitment . . . or (iii) other voluntary relinquishment by the parent or parents . . .").

_____

unsanitary condition of the Marston home, the Marstons' inappropriate discipline of the children, and their psychological progress. Because the evidence at trial proved that these conditions had not been remedied, the Marstons' focus on terminology used by the court in passing does not prove that the court erred in concluding that the conditions leading to neglect could not be remedied in accordance with Code § 16.1-283(B)(2).

[7] Mr. Marston presented several questions on appeal that we do not consider because he failed to address them in his brief. See Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001). Nor do we consider his argument on appeal that the Department failed to consult with him regarding the foster care plan, which he did not raise before the circuit court. See Rule 5A:18.

We also find his second argument to be without merit.  Code § 16.1-283(G) provides that, if a child fourteen years of age or older or "otherwise of an age of discretion as determined by the court," objects to the termination of parental rights, they will not be terminated.  At the time of trial, Xenia was nine years old.  Therefore, the trial court had discretion to determine whether her objection would prevent the termination of her parents' parental rights.  Deahl v. Winchester Dept. of Soc. Servs., 224 Va. 664, 299 S.E.2d 863 (1983).  Mr. Marston offered no evidence that Xenia was otherwise at "an age of discretion." Xenia's therapist, however, testified that she did not believe Xenia had the maturity and discretion to make such a choice.  This testimony was sufficient for the trial judge to conclude that Xenia was not of the age of discretion and that her testimony could not affect the court's decision to terminate the Marstons' parental rights.  Accordingly, the trial court did not abuse its discretion by excluding this irrelevant evidence.  See Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1998) (holding that admission of evidence is within the broad discretion of the trial court).

Affirmed.