COURT OF APPEALS OF VIRGINIA


Present:    Judges Annunziata, Kelsey and Senior Judge Overton
Argued at Salem, Virginia


DEWEY CECIL BALDWIN

                                                        OPINION BY
v.        Record No. 0084-04-3              JUDGE D. ARTHUR KELSEY
                                                        OCTOBER 5, 2004

MARY FLORENCE MATHERLY BALDWIN


                FROM THE CIRCUIT COURT OF HENRY COUNTY
                          David V. Williams, Judge

          Jonathan S. Kurtin (Shapiro & Kurtin, on brief), for appellant.

          (John H. Heard, on brief), for appellee.  Appellee submitting
          on brief.


        Dewey Cecil Baldwin argues on appeal that the trial court erred as a matter of law by

denying his motion to terminate spousal support pursuant to Code § 20-109(A), which bars support

to a former spouse involved in a cohabitation relationship analogous to marriage.  He also argues his

property settlement agreement, incorporated into his final divorce decree, authorizes termination on

these grounds.  We disagree with both assertions and affirm the trial court's decision.

                                              I.

        In 1989, in anticipation of divorce, the parties executed a property settlement agreement.

The agreement fixed the amount of spousal support and provided that it "shall cease upon the

death of Husband or upon the death of Wife, or upon the remarriage of Wife."  The agreement

also authorized either party to later request that a court "modify, change or amend" the amount

of support upon a showing of changed circumstances.  The agreement further provided that, if the

parties did get a divorce, the agreement would be "incorporated by reference and made a part of"

any final decree.  The parties later obtained a final divorce decree that "ratified, confirmed, and

approved" the agreement. The decree also stated the agreement was "incorporated herein by reference and made a part of this decree." Appellant's counsel prepared the order and consented to its entry.

Eight years later, in 1997, the General Assembly amended Code § 20-109. Among other changes, the legislature divided the then-existing first paragraph of the statute into subsections (A) and (B). To subsection (A), the legislature added this new language:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997 the court may decrease or terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would constitute a manifest injustice.

1997 Va. Acts, ch. 241. After amendments in 1998, 2000, and 2001, the present version of Code § 20-109(A) now reads:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court shall terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would be unconscionable. The provisions of this subsection shall apply to all orders and decrees for spousal support, regardless of the date of the suit for initial setting of support, the date of entry of any such order or decree, or the date of any petition for modification of support.

In 2002, appellant moved to terminate his spousal support obligations pursuant to Code § 20-109(A), asserting that appellee had been living in a cohabitation relationship analogous to marriage for the preceding two years. Appellee opposed the motion, arguing that no statutory right to termination existed (because Code § 20-109(A) did not apply retroactively to impair contractual

rights) and no contractual right of termination existed (because the agreement did not authorize termination for cohabitation, only remarriage).

The chancellor denied the motion to terminate and granted appellant leave to amend. Appellant filed an amended motion adding a second ground for termination based upon the change-of-circumstances provision of the agreement. Shortly thereafter, however, appellant moved the court to reconsider, arguing that Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*), undercut the basis of the trial court's initial ruling. Appellant then withdrew his amended motion to terminate, stating he was content to "rise or fall" on the statutory bar of Code § 20-109(A) and the specific language of his agreement.

The chancellor agreed to reconsider his ruling, heard additional argument, and permitted *ore tenus* examination of appellee regarding cohabitation. The trial court found the evidence proved appellee's cohabitation in a relationship analogous to marriage. The court, however, again denied the motion to terminate. The court held Code § 20-109(A) could not be applied retroactively. And the agreement, the court further found, did not authorize termination on cohabitation grounds.

On appeal, appellant acknowledges he has abandoned his change-of-circumstances argument, conceding that changes in his ability to pay support would likely offset any economies of scale enjoyed by his former wife in her cohabitation arrangement. Even so, he argues, both Code § 20-109(A) and his agreement provide him with a right to terminate support as a matter of law. We disagree, finding neither ground sufficient to permit — much less require — termination as a matter of law.

II.

A.   STATUTORY RIGHT TO TERMINATE SPOUSAL SUPPORT

Appellant contends Code § 20-109(A) bars spousal support to his former wife given the trial court's finding that she cohabited in a relationship analogous to marriage. The statutory

right to termination, he argues, applies here because the final divorce decree ordering support may be modified at any later date pursuant to then-extant law. The appellant interprets the last sentence of subsection (A) — making the cohabitation bar applicable to all orders regardless of the date of entry — to require this result.

Appellant's reasoning, while persuasive as far as it goes, does not go far enough to answer the question presented. In this case, the final decree expressly "incorporated herein by reference and made part of this decree" a bilateral agreement vesting the appellee with a contractual right to *permanent* spousal support. The decree did not involve an exercise of judicial power to resolve a litigable contest over appellee's entitlement to statutory spousal support. No judicial balancing of the statutory decisionmaking variables outlined in Code § 20-107.1(E) can be imputed to this decree. It merely ordered appellant, at his urging, to do what he had already agreed to do.

Nor can the decree be characterized as a mere scheduling order preserving the status quo, or an agreed-upon *pendente lite* order addressing temporary support, or a consent order agreeing to nothing more than the parties' joint desire to put a contested matter off until a later hearing. Instead, the final decree embodied and enforced something quite different: a negotiated agreement between the parties vesting appellee with a contractual right to permanent spousal support. The decree's contractual character places it within the general rule recognizing that vested contractual rights — whether incorporated by, memorialized in, or merged into a final decree — "cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief." <u>Newman v. Newman</u>, 42 Va. App.

557, 568-69, 593 S.E.2d 533, 539 (2004) (*en banc*); Smith v. Smith, 41 Va. App. 742, 747, 589 S.E.2d 439, 441 (2003).[1]

Under these circumstances, to apply Code § 20-109(A) retroactively would amount to an unconstitutional impairment of appellee's vested contractual right to support — something the legislature surely did not intend and something we could not approve even if it did. See Rubio v. Rubio, 36 Va. App. 248, 255, 549 S.E.2d 610, 613-14 (2001) (*en banc*) (holding that giving "retroactive effect" to Code § 20-109(A) would "accomplish a forbidden impairment of Ms. Rubio's contractual entitlement to support"); Hering v. Hering, 33 Va. App. 368, 375, 533 S.E.2d 631, 634 (2000) (holding that application of the "amended language of Code § 20-109(A) to the circumstances of these parties would be an unconstitutional impairment of contract"); accord Smith, 41 Va. App. at 752, 589 S.E.2d at 443 (concluding that there is "no reason for applying a different result from that reached in Rubio and Hering where the contracts did not merge"). See generally Peter N. Swisher, Lawrence D. Diehl & James R. Cottrell, Virginia Family Law: Theory, Practice & Forms § 9.11, at 259-60 (2004).

As to the last sentence of Code § 20-109(A), making the cohabitation bar applicable to support orders regardless of the date of entry, we view that 2001 amendment to the statute as a clarification of the trial court's authority over *non-contractual* support awards — not as a legislative attempt to impair preexisting *contractual* rights to support. The 2001 amendment appeared to target the panel decision in Rubio, which limited the statute to a purely prospective

---

[1] Under Newman, a decree does not attain contractual character purely by virtue of its consensual entry. One can consent to the entry of an order without entering into a binding bilateral agreement. As with all contractual instruments, the party asserting the existence of an agreement bears the burden of persuasion to prove its existence. That posed no problem in Newman because the final consent decree stated that "all matters in dispute" were "settled and agreed" and then recited verbatim the terms of the parties' agreement on permanent spousal support. Id. at 561, 593 S.E.2d at 535. The parties, moreover, reaffirmed in open court (at trial and on appeal) the contractual character of the decree.

- 5 -

application.  See Rubio v. Rubio, 33 Va. App. 74, 531 S.E.2d 612 (2000).  Under that precedent, only non-contractual support decrees entered after the statute's enactment could be terminated on cohabitation grounds.  The cohabitation bar thus had no effect on non-contractual support decrees entered before the statute's enactment.  We specifically rejected this reasoning in our *en banc* decision in Rubio, finding that the 2001 amendment made clear the "legislature did not intend that result."  Rubio, 36 Va. App. at 252, 549 S.E.2d at 612.  We likewise made clear, however, that the statute could not be applied retroactively if doing so would impair vested contractual rights.  Id. at 255, 549 S.E.2d at 614.

For these reasons, the trial court correctly denied appellant's motion to terminate spousal support to the extent the motion asserted the statutory cohabitation bar of Code § 20-109(A).  Enacted after the parties' agreement, Code § 20-109(A) cannot of its own force terminate a preexisting contractual right to spousal support.  If appellant has any right to terminate support on cohabitation grounds, that right must be rooted in the express terms of the agreement.

### B.   CONTRACTUAL RIGHT TO TERMINATE SPOUSAL SUPPORT

The parties' agreement nowhere authorizes termination on cohabitation grounds.  Instead, it permits termination only upon death or remarriage.  Acknowledging this omission, appellant argues that the contract did not need to mention cohabitation directly because our decision in Hardesty v. Hardesty, 40 Va. App. 663, 581 S.E.2d 213 (2003) (*en banc*), implies the cohabitation provision as a matter of law.  Only an express declaration precluding termination on cohabitation grounds, appellant reasons, can survive scrutiny under Hardesty.

We read Hardesty differently.  Both the reasoning and the result in Hardesty assume the particular statutory bar in dispute applies of its own force.  Starting from that presupposition, Hardesty then addresses the level of specificity in contractual language required to preclude the operation of the statutory bar.  Put another way, when one of the statutory bars in Code § 20-109

applies, Hardesty requires that the agreement "expressly *preclude* termination of the contractual duty of spousal support" on that ground.  Newman, 42 Va. App. at 570, 593 S.E.2d at 540 (emphasis in original).  "If it fails to do so, the contractual obligation may be terminated."  Id.  In this way, Hardesty can best be understood as recognizing a statutory preset that can be undone only by the clearest possible expression of contractual intent.

On the other hand, when Code § 20-109's statutory bars do not apply, ordinary principles of contract law do — and they, not Hardesty, determine the scope of the payee's right to receive spousal support and the payor's right to terminate it.  Under those principles, the general rule prevails:  "Absent equitable grounds warranting rescission, a contract cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief."  Newman, 42 Va. App. at 568-70, 593 S.E.2d at 539-40.  Thus, whether a statutory bar to spousal support must be *expressly included* in the agreement as a ground for termination or *expressly excluded* depends entirely on whether the agreement predates or postdates the legislative enactment creating the bar.  Id. at 570, 593 S.E.2d at 540 (recognizing that, when applicable, subsections (A) & (D) of Code § 20-109 reverse the normal contractual sequence for cases involving "cohabitation, remarriage, or death").[2]

In this case, the property settlement agreement predated the first version of the statutory cohabitation bar by some eight years.  The termination provision of the agreement authorizes termination of support upon remarriage or death, but says nothing about cohabitation.  We cannot "rewrite" the agreement to include a right of termination for cohabitation.  Hering, 33 Va. App. at 375, 533 S.E.2d at 635.  To do so would be contrary to the maxim that no court can

---

[2] In Hardesty, the parties entered into their property settlement agreement in 2000, long after the enactment of Code § 20-109(D)'s statutory bar to spousal support after remarriage of the payee spouse — the only statutory bar relevant to that case.

"insert by construction, for the benefit of a party, a term not express in the contract." Am. Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001) (citation omitted); Jones v. Harrison, 250 Va. 64, 68, 458 S.E.2d 766, 769 (1995) (emphasizing that "we have stated on a number of occasions that we do not rewrite contracts to insert provisions that have been omitted by the parties"). The trial court, therefore, properly denied the motion to terminate support to the extent it asserted a contractual entitlement to termination.

III.

Because the parties' agreement predated the cohabitation bar of Code § 20-109(A), appellant has no statutory right to terminate spousal support on cohabitation grounds. And, because the agreement does not authorize termination on cohabitation grounds, appellant has no contractual right to terminate. Finding the trial court's reasoning sound and its result correct, we affirm.

Affirmed.