COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Humphreys and Kelsey
Argued at Chesapeake, Virginia


JOHN F. COURTNEY

v.        Record No. 2124-05-1

CYNTHIA H. COURTNEY                         MEMORANDUM OPINION* BY
                                             JUDGE ROBERT P. FRANK
CYNTHIA H. COURTNEY                              JUNE 20, 2006

v.        Record No. 2165-05-1

JOHN F. COURTNEY


              FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                            A. Bonwill Shockley, Judge

              Robert B. Jeffries (Law Offices of Diane Fener, P.C., on briefs), for
              John F. Courtney.

              Rita Ros-Planas (Rita Ros-Planas, P.C., on briefs), for Cynthia H.
              Courtney.


        John F. Courtney (husband) and Cynthia H. Courtney (wife) have filed cross-appeals

from the trial court's rulings resolving issues related to their divorce.  Husband contends the trial

court erred in:  (1) finding that the duration of his spousal support obligation is governed by Code

§ 20-109(D); (2) finding that the spousal support provision of the stipulation agreement is not

modifiable by the court; (3) finding wife was not estopped from arguing that the agreement cannot

be modified; (4) refusing to allow parol evidence in interpreting the duration of spousal and child

support awards; (5) finding the agreement was not unconscionable; and (6) finding that the parties

had not reconciled.  In her cross-appeal, wife contends the trial court erred in (1) refusing to award

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

her attorney's fees incurred by her in enforcing and defending the terms of the settlement agreement; and (2) refusing to divide the marital share of husband's military pension. Wife also seeks attorney's fees on appeal. For the reasons stated, we affirm in part and reverse in part.

BACKGROUND

Husband and wife were married on March 1, 1983 and separated on or about February 7, 2001. On May 10, 2001, the parties executed a stipulation agreement, which addressed such issues as child and spousal support, child custody, equitable distribution, debts, health insurance, and attorney's fees.

Portions of the stipulation relevant to the issues on appeal are as follows:

> WHEREAS, the parties mutually desire to effect a *partial* settlement and adjustment of rights and questions arising from their marital status and separation.
>
> *   *   *   *   *   *   *
>
> NOW, THEREFORE, in consideration of the mutual promises, covenants, agreements, and payments hereinafter contained, without in any way attempting to facilitate divorce or separation, but rather in recognition of the irreconcilability of their differences, the prior and existing separation of the parties, the parties having considered their earning capacities, obligations, needs and financial resources, their education and training, and their ability to work and opportunity to secure employment, the standard of living established during their marriage, the duration of the marriage, the age, physical and mental condition of the parties, and the equities between the parties, and in order to *partially* settle their property rights, the parties do hereby covenant and agree as follows:
>
> *   *   *   *   *   *   *
>
> 1. <u>GENERAL PROPERTY RIGHTS</u>: a) Except as otherwise provided herein, each party may dispose of his or her property in any way, and each party hereby waives and relinquishes any and all rights he or she may have or hereafter acquire to share the property or the estate of the other as a result of the marital relationship.
>
> *   *   *   *   *   *   *

- 2 -

2. <u>WAIVER OF EQUITABLE DISTRIBUTION OF PROPERTY</u>: The parties acknowledge that they are aware that the Commonwealth of Virginia provides for equitable distribution of property, both "real" and "personal." Both parties hereby waive any rights or benefits of any nature whatsoever which they may have acquired or to which they may be entitled under the laws or statutes providing for equitable distribution and each agree that the distribution of their property, monetary or otherwise, shall be governed as set forth in this Agreement. The parties further represent that they understand the meaning of equitable distribution and its application to their estate and property. Code of Virginia Section 20-107.3 (Virginia's Equitable Distribution Law), to seek a monetary award, a percentage of a pension, profit-sharing, deferred compensation plans and/or retirement benefits, a partition of jointly-owned or jointly-titled marital property or a division or transfer or jointly-owned or jointly-titled marital property, except as herein agreed, and each party covenants not to sue the other party therefore.

\* \* \* \* \* \* \*

14. <u>SPOUSAL AND CHILD SUPPORT:</u> a) Husband shall pay to the Wife, as and for combined spousal and child support $2,250.00 per month, payable $1,125 on the 1st and $1,125 on the 15th of each and every month.

b) Husband shall be solely responsible for all extracurricular activities of the child, including but not limited to payment of tennis lessons.

\* \* \* \* \* \* \*

19. <u>EQUITABLE DISTRIBUTION:</u> The parties shall execute an addendum to the Separation Agreement to decide how to distribute their assets, including but not limited to all intangibles and all real estate owned by the parties, provided the Husband verifies all sales of real estate properties to the Wife by copying her on any sales and verify for her his monthly cash flow due to rental income, second mortgage payments and rehabilitation projects.

\* \* \* \* \* \* \*

23. <u>ATTORNEY'S FEES:</u> a) Each party shall pay own attorney's fees. Husband acknowledges that Rita Ros-Planas, Esquire is counsel for Wife and that he has been advised to seek independent legal counsel. b) Should either party be required to retain counsel or initiate litigation to enforce or defend any

> provisions of this Agreement the other shall be responsible for
> and pay forthwith upon presentation of a statement for same,
> any and all expenses incurred, including, but not limited to,
> reasonable legal fees, court cost, investigator's fees and travel.

(Emphases added).

Wife filed a bill of complaint for divorce on April 19, 2004 praying *inter alia*, that "the partial agreement dated May 10, 2001 between the parties be affirmed and ratified"; that support be modified "due to a material change in circumstances;" that the court make an equitable distribution award under Code § 20-107.3; and that the court direct payment of a percentage of the marital share of any pension or retirement benefits. Wife alleged the stipulation reserved equitable distribution "for further agreement or adjudication."

In his answer, husband alleged the parties separated on December 10, 2003, not February 7, 2001 as wife alleged in her bill of complaint. Husband further denied that the copy of the stipulation attached to wife's bill of complaint is a "true and accurate copy" of the actual stipulation. In his cross-bill, husband alleged desertion and asked *inter alia* that "both parties be granted equitable distribution . . . ."

Wife filed *pendente lite* motions for an increase in spousal support on April 19, 2004, June 10, 2004, and August 11, 2004.

Wife's motion for the entry of the stipulation was heard on July 16, 2004. Husband indicated he was placing the validity of that agreement into dispute. The trial court opined the issue of validity required a full hearing and referred the matter to a commissioner in chancery.

By *pendente lite* order entered October 1, 2004 the trial court found the stipulation to be valid, but did not ratify it at that time.

A commissioner in chancery conducted a hearing, filed his report, and both parties filed exceptions. The trial court heard the parties' exceptions on March 18, 2005. At that hearing the

court ruled that the amount of spousal support is not modifiable and would continue until death or wife's remarriage. Husband continued to challenge the validity of the stipulation.

On May 19, 2005, the trial court heard argument on attorney's fees, equitable distribution, and reconciliation. Husband argued that because wife asked that the unitary award be modified, she too attacked the validity of the stipulation. The trial court ratified, affirmed, and incorporated the parties' stipulation agreement into the final decree of divorce. The court found the contract between the parties was valid and unambiguous, and it was executed with no overreaching by either party. Further, the court found that the parties had not reconciled during the period of June 2003 through December 2003.

In denying wife's request for attorney's fees, which she contended were mandated by the stipulation, the trial court agreed with husband's argument and found, essentially, that both parties incurred attorney's fees to defend and enforce the stipulation.

The trial court also found wife was not entitled to a share of husband's military pension because of the support she is receiving. The trial court did not find that wife waived her right to an equitable distribution award, holding that the waiver language was "boilerplate" and that the "binding part of the agreement is paragraph 19 since it is the more specific as to equitable distribution . . . ."

This appeal follows.

## ANALYSIS

### DURATION OF SPOUSAL SUPPORT

Husband contends the trial court erred in determining that Code § 20-109(D) supplies a "default duration" in stipulation agreements to pay spousal support. Husband argues that neither Code § 20-109(D) nor public policy establishes that if an agreement to pay spousal support omits

- 5 -

a term of duration, support must be paid until one of the parties dies or the recipient of the

support remarries.  We disagree.

Clearly, nothing in the agreement suggests the support was for a defined duration.

> Contracts are construed as written, without adding terms that were
> not included by the parties.  Wilson [v. Holyfield], 227 Va. [184,]
> 187, 313 S.E.2d [396,] 398 [(1984)].  Where the terms in a contract
> are clear and unambiguous, the contract is construed according to
> its plain meaning.  Bridgestone/Firestone v. Prince William Square
> Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); Ross v.
> Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986).  A contract
> is not ambiguous merely because the parties disagree as to the
> meaning of the terms used.  Id. at 212-13, 343 S.E.2d at 316.
> Furthermore, contracts must be considered as a whole "without
> giving emphasis to isolated terms."  American Spirit Ins. Co. v.
> Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001).

TM Delmarva Power v. NCP of Virginia, 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).

Contrary to husband's contention, the plain language of the statute makes clear the intent

to supply contract and stipulation agreements with a default duration provision when otherwise

not specified.  Code § 20-109(D) provides:

> *Unless otherwise provided by stipulation or contract*, spousal
> support and maintenance shall terminate upon the death of either
> party or remarriage of the spouse receiving support.  The spouse
> entitled to support shall have an affirmative duty to notify the
> payor spouse immediately of remarriage at the last known address
> of the payor spouse.

(Emphasis added).

Under basic principles of statutory construction, we must determine the General

Assembly's intent from the words contained in a statute.  Williams v. Commonwealth, 265 Va.

268, 271, 576 S.E.2d 468, 470 (2003).  When the language of a statute is unambiguous, we are

bound by the plain meaning of that language and may not assign the words a construction that

amounts to holding that the General Assembly did not mean what it actually stated.  Id.

The language of Code § 20-109(D) is unambiguous and dictates that "unless otherwise provided," the payor's obligation shall cease upon death of either party or remarriage of the spouse who is receiving support. Thus, Code § 20-109(D) sets out the only qualifying events for termination of support payments when the parties have not done so themselves. The only reasonable interpretation of the statute is that, in the absence of an agreement otherwise, support must continue until the occurrence of one of the predicate events.

Additionally, the Supreme Court of Virginia has long recognized the continuing nature of spousal support.

> Virginia's alimony is uncertain in duration and ceases entirely upon the death of either husband or wife, Durrett v. Durrett, 204 Va. 59, 129 S.E.2d 50 (1963), or upon remarriage of the wife. Code §§ 20-109 (Cum. Supp. 1974) and 20-110 (Repl. Vol. 1960).

Osborne v. Osborne, 215 Va. 205, 209, 207 S.E.2d 875, 880 (1974); see also Eaton v. Davis, 176 Va. 330, 340, 10 S.E.2d 893, 898 (1940) ("[Support payments] are uncertain in duration and cease upon the death of either party.").

This Court has also held that the right to spousal support is terminated only by death of either party or remarriage of the dependent spouse, unless the parties agree otherwise. Code § 20-109; Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988). Thus, it is well established that husband's spousal support obligation will not terminate until the death of either party or wife's remarriage, and the trial court did not err in so ruling. We find that when an agreement is silent as to duration, Code § 20-109(D) controls.

## MODIFIABLITY OF SPOUSAL SUPPORT

Relying upon Code § 20-109(A), husband claims the agreement between the parties with regard to spousal support is modifiable by the court. We disagree.

Code § 20-109(A) authorizes the trial court to modify spousal support and maintenance upon the petition of either party if the court determines that there has been a material change in

- 7 -

circumstances that justifies a modification. See Hollowell, 6 Va. App. at 419, 369 S.E.2d at 452. However, where the parties contract or stipulate to the amount of spousal support and that agreement is filed without objection prior to the entry of the final divorce decree, "no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract." Code § 20-109(C). Accordingly, where, as here, the parties have agreed to a sum of spousal support and the agreement has been incorporated into the final decree of divorce, the trial court does not have the authority to modify support, except as provided in the agreement. Parrillo v. Parrillo, 1 Va. App. 226, 228, 336 S.E.2d 23, 24 (1985). Under these circumstances, Code § 20-109(A) does not apply.

Husband asserts the court erred in applying Code § 20-109(D) to the agreement, but did not consider subsection (A) of the same statute regarding the ability of the court to modify the agreement. This argument clearly ignores the rules of statutory construction. "'[T]he province of [statutory] construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation.'" Coleman v. Commonwealth, 27 Va. App. 768, 773, 501 S.E.2d 461, 463 (1998) (quoting Winston v. City of Richmond, 196 Va. 403, 408, 83 S.E.2d 728, 731 (1954)).

Husband misreads the statute. Here, the statutory scheme of subsection (A) is to allow a court to modify spousal support in cases where no stipulation exists between the parties. See Newman v. Newman, 42 Va. App. 557, 568-69, 593 S.E.2d 533, 539 (2004) (*en banc*) ("Absent equitable grounds warranting rescission, a contract cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief."); see also McLoughlin v. McLoughlin, 211 Va. 365, 368, 177 S.E.2d 781, 783 (1970) (holding that, where a property settlement agreement provided for an award of spousal support, without specifying a duration for that award, the trial court was required to enter an award of support for

that amount because otherwise, the decree "would have been an 'order directing the payment of alimony' that was not in accord with the settlement contract and therefore in conflict with [Code] § 20-109"). Subsection (C) precludes a court from modifying an existing marital agreement where the parties have already entered into a stipulation, as the parties have done in this case. Finally, subsection (D) sets out the criteria for termination of support if not otherwise provided by contract or stipulation. Each subsection applies to a distinct factual situation, and each is applied independently. There is no language in the statute requiring that subsections (A) and (D) be applied simultaneously. Subsection (A) does not apply to the facts of this case, and the trial court did not err in failing to consider its provisions. We find appellant's argument without merit.

## JUDICIAL ESTOPPEL

Husband contends the trial court erred in allowing wife to argue a position inconsistent with her pleadings. He claims that wife's bill of complaint and subsequent *pendente lite* motions seeking an increase in support preclude her from arguing that the agreement is not now subject to modification. Wife responds that husband is essentially arguing judicial estoppel, which has no place in the facts of this case. We agree with wife.

Husband cites Dickson v. Dickson, 23 Va. App. 73, 474 S.E.2d 165 (1996), to support his claim that "[i]t is well established in Virginia that a litigant will be precluded from taking inconsistent and mutually contradictory positions." He argues wife cannot be allowed to first request an increase in support, and later argue that the support provisions cannot be changed. Wife responds that pursuant to Bentley Funding Group v. SK&R, 269 Va. 315, 609 S.E.2d 49 (2005), judicial estoppel does not apply because the issue sought to be estopped is one of law, rather that fact.

- 9 -

"'[J]udicial estoppel forbids parties from assuming successive positions in the course of a suit, or series of suits, in reference to the same fact or state of facts, which are inconsistent with each other, or mutually contradictory.'" Bentley Funding Group, 269 Va. at 325, 609 S.E.2d at 54 (quoting Lofton Ridge, LLC v. Norfolk S. Ry. Co., 268 Va. 377, 380-81, 601 S.E.2d 648, 650 (2004)). "The fundamental element of judicial estoppel is that 'the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in a prior litigation. And the position sought to be estopped must be one of fact rather than law or legal theory.'" Id. at 326, 609 S.E.2d at 54 (quoting Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996)). Finally, judicial estoppel applies only if a prior court has adopted the prior inconsistent position. Id. at 327, 609 S.E.2d at 55.

In the instant case, husband is seeking to estop wife from taking the position that the spousal support provision is not subject to modification. He argues that because wife previously requested an increase in support, she advocated that the agreement was modifiable. As previously discussed, the question of whether a marital contract can be modified is resolved as a matter of law. Thus, husband's claim of judicial estoppel does not apply to wife's previous request for an increase in spousal support because her prior position was not one of fact, but one of law. See id. at 326, 609 S.E.2d at 54.

We conclude that husband failed to prove wife is now judicially estopped from claiming that the stipulation agreement cannot be modified by the court.

UNITARY AWARD

Husband argues the commissioner and trial court erred in interpreting how the unitary award of spousal and child support will be treated when the child attains the age of eighteen (18) years. This argument presupposes the trial court apportioned the unitary award. It did not. At best, appellant is asking for an advisory opinion from this Court. "'[C]ourts are not

constituted . . . to render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative.'" Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964)). Thus, we cannot consider this issue on appeal.

## PAROL EVIDENCE

Citing Shoup v. Shoup, 31 Va. App. 621, 525 S.E.2d 61 (2000), husband contends that because the property settlement agreement did not recite the duration of support or modification of support when the child becomes emancipated, it was indefinite and parol evidence was admissible to show that he did not intend for spousal support to continue indefinitely. Both the trial court and the commissioner found that the parties' agreement was unambiguous, thus precluding the admission of parol evidence.[1]

"[M]arital property settlements . . . are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms." Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002).

It is firmly established that, when the terms of a contract are clear and unambiguous, a court is required to construe the terms according to their plain meaning. Bridgestone/Firestone, 250 Va. at 407, 463 S.E.2d at 664. "The guiding light . . . is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Magann Corp. v. Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962). Thus, if the intent of the parties can be determined

---

[1] Husband proffered at the commissioner's hearing and testified at trial that he believed, and intended, his obligation to pay support would terminate upon repayment of his indebtedness of over one (1) million dollars. Otherwise, he never would have signed the agreement. He argues on brief that the most persuasive evidence that the parties intended spousal support to be modifiable is that wife, herself, asked for a modification of the agreement by requesting an increase in support before the entry of the final decree.

from the language they employ in their contract, parol evidence respecting their intent is inadmissible. Amos v. Coffey, 228 Va. 88, 91-92, 320 S.E.2d 335, 337 (1984).

Husband claims the agreement was silent as to the duration of spousal support, modification of spousal support, and duration of child support. We disagree. No terms of the contract are ambiguous or indefinite. Indeed, the agreement specifies that husband shall pay wife a sum certain on the first and fifteenth day of every month. As previously stated, the terms of duration that husband claims are missing are supplied as a matter of law pursuant to Code § 20-109(D). Additionally, the court cannot modify the agreement, with the exception of severing the unitary agreement with regard to the child support payments at the appropriate time. Code § 20-109(C); see also Johnson v. Johnson, 1 Va. App. 330, 333, 338 S.E.2d 353, 355 (1986) (ruling that where the trial court awarded unitary spousal and child support, husband must "apply to the court for a modification of the decree upon a change of condition" in order to reduce payments to the remaining children upon the emancipation of the oldest child). We find nothing ambiguous or indefinite as to the duration or modifiability of the contract, and the trial court properly disallowed parol evidence.

## UNCONSCIONABILITY

Husband argues that if the agreement was read literally, it would be unconscionable because he would not be able to fulfill all of the requirements of the agreement for an indefinite period. Specifically, he contends that at the time he executed the agreement, his debt far exceeded his income and he was concerned about his wife's fragile state of mental health. Wife responds that pursuant to this Court's recent decision in Galloway v. Galloway, 47 Va. App. 83, 622 S.E.2d 267 (2005), husband must prove both a gross disparity in the division of assets and overreaching or oppressive influences. We agree with wife.

"Appellant must prove both 1) a gross disparity existed in the division of assets and 2) overreaching or oppressive influences. Courts must view the apparent inequity in light of other attendant circumstances to determine whether the agreement is unconscionable and should be declared invalid." Id. at 92, 622 S.E.2d at 271 (citations omitted). Thus, it is well established that an agreement will not be found unconscionable based solely on the existence of a gross disparity in value exchanged.

Husband has failed to allege or demonstrate overreaching influences. Notably, the trial court observed that husband is an "educated person who read the agreement." Additionally, husband acknowledged that, for financial reasons, he declined to seek legal counsel prior to signing the agreement. Because husband has not shown any overreaching by wife, we find that husband failed to prove that the agreement was unconscionable and the trial court did not err in so ruling.[2]

## RECONCILIATION

The commissioner found that the parties had reconciled during the period of June through December of 2003. The trial court disagreed and found that the evidence was insufficient to show reconciliation. Husband claims the trial court erred in reversing the commissioner. We find no error.

The commissioner ruled:

> All right. He's admitted he moved back in. She's admitted he was
> in there. Okay. I don't know what went on. I don't know what
> the intentions are. There's no independent corroborating evidence
> to support him or her . . . but when you've got the two of them
> living under the same house for a six-month period of time, I'm

___

[2] Wife argues further that a marital agreement cannot be set aside on the basis of unconscionability alone. She asserts that Code § 20-151(A)(2) requires that unconscionability be coupled with either a lack of financial disclosure or a lack of a waiver of disclosure to render a marital agreement unconscionable. Because we find that husband has not proven unconscionability, we need not address this argument.

- 13 -

hard pressed to find that it's not a reconciliation during that period of time. Okay.

* * * * * * *

You don't have to sleep together. They're living in the same household. He's being fed. She's being fed. I'm not going to, you know, sit here and guess what went on in there.

* * * * * * *

I'm just finding they're back together. If neighbors look at them, they're coming in and out of the house together, to everybody else that's the appearance.

We have held that for a reconciliation to occur, the parties must evince an intent to resume their marital relationship.

> Reconciliation is the resumption of one's marital status by voluntarily living together, openly as husband and wife. Crenshaw v. Crenshaw, 12 Va. App. 1129, 408 S.E.2d 556 (1991). Reconciliation means more than simply cohabitation or the observance of civility; it comprehends a fresh start and genuine effort by both parties. Black's Law Dictionary 1272 (6th ed. 1990). Reconciliation must exhibit proof that the parties intend to live together as husband and wife and take up their respective roles in the relationship. In order that the evidence may satisfactorily establish such a reconciliation and resumption of cohabitation as will affect a separation agreement, it must ordinarily appear that the parties have established a home and that they live together in it in the normal relationship of husband and wife. Roberts v. Pace, 193 Va. 156, 159, 67 S.E.2d 844, 846 (1951).

Jacobsen v. Jacobsen, 41 Va. App. 582, 590, 586 S.E.2d 896, 899 (2003).

We have previously summarized the rules to be applied when a trial court considers a report of a commissioner in chancery and when we review the matter on appeal.

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence. This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, but is not applicable to pure conclusions of

- 14 -

law contained in the report. On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong.

Hill v. Hill, 227 Va. 569, 576-77, 318 S.E.2d 292, 296-97 (1984) (citations omitted).

When a chancellor has disapproved a commissioner in chancery's report, we must determine whether, under a correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the chancellor. Jampol v. Farmer, 259 Va. 53, 58, 524 S.E.2d 436, 439 (2000). However, when a court refers a case to a commissioner in chancery, it does not delegate its judicial functions to the commissioner, and is not bound by the commissioner's recommendations. Price v. Price, 4 Va. App. 224, 228, 355 S.E.2d 905, 907 (1987). "'Rather, the court must review the evidence, apply the correct principles of law, and make its own conclusions as to the appropriate relief required.'" Id. (quoting Dukelow v. Dukelow, 2 Va. App. 21, 26-27, 341 S.E.2d 208, 211 (1986)).

Here, the commissioner expressly stated that he did not know the intent of the parties, and concluded that based upon appearances, the parties had reconciled. In that regard, the commissioner applied the incorrect legal standard. Because the commissioner's decision was not made in accordance with principles established by Jacobsen, the commissioner's conclusion that the parties reconciled carries no weight with the trial court.

Our inquiry is whether the trial court applied the correct principles of law and whether the evidence supports the trial court's findings of fact.

"We review the evidence in the light most favorable to . . . the party prevailing below and grant all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). When faced with a challenge to the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct,'" Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876 (2002) (quoting Broom v. Broom, 15 Va. App. 497, 504, 425 S.E.2d 90, 94 (1992)), and reverse only if the trial court's decision is "'plainly wrong or

- 15 -

without evidence to support it.'" Id. (quoting Dodge v. Dodge, 2 Va. App. 238, 242, 343 S.E.2d 363, 365 (1986)).

"'[I]ntent . . . is a question of fact to be determined from the evidence.'" Jacobsen, 41 Va. App. at 591, 586 S.E.2d at 899 (quoting Hall Bldg. Corp. v. Edwards, 142 Va. 209, 215, 128 S.E. 521, 523 (1925)).

The evidence in this case supports the trial court's conclusion that the parties did not resume their normal relationship as husband and wife with the intent to reconcile. While the burden was on husband to prove that reconciliation occurred, see id. at 591, 586 S.E.2d at 900, wife rebutted all of husband's evidence purporting to establish reconciliation. She testified at the commissioner's hearing that husband moved back into the marital residence because they were "having financial difficulty." She explained "the whole idea was that we would have this family unit with him as a boarder, basically; but we would have him in the house with his son and that we would be saving money." She told the commissioner she dismissed her divorce attorney because she had a credit on her lawyer's account for nearly $900 and she needed the money. When asked by counsel if she and her husband spoke of reconciliation during the time husband moved back in, she responded "No." When asked if she wanted to reconcile, again she responded "No." She testified she never felt as if they reconciled, and continued to introduce herself as a "single mother" or "single parent."

Thus, there is evidence in the record to support the trial court's finding that the parties did not cohabit with the intent to return to the status of their previous marital relationship.

CHANGE IN CIRCUMSTANCES

We note that in husband's brief, he presents the question of whether the trial court and the commissioner erred in refusing to consider evidence of changed circumstances and to make a determination with respect to spousal support pursuant to Code § 20-107.1. However, husband's

brief contains no argument or authority suggesting any such error by the commissioner or the

court. Additionally, husband's brief fails to identify any change in circumstance that would

affect his spousal support obligation. Thus, we have no basis to consider this issue. See Rule

5A:20(e) ("The opening brief of appellant shall contain . . . [t]he principles of law, the argument,

and the authorities relating to each question presented.").

MILITARY PENSION

Wife contends the trial court erred in not awarding her a share of husband's military

pension. On appeal, husband claims the trial court was correct in not making the award since

wife waived any right to an equitable distribution award in paragraph 2. Husband concedes the

pension is marital property.

"When a written marital agreement is presented, a court applies 'the same rules of

formation, validity and interpretation' used in contract law, except where specified by the Code."

Shenk v. Shenk, 39 Va. App. 161, 170, 571 S.E.2d 896, 901 (2002) (quoting Smith v. Smith, 3

Va. App. 510, 513, 351 S.E.2d 593, 595 (1986)).

> A well-settled principle of contract law dictates that "where an
> agreement is complete on its face, is plain and unambiguous in its
> terms, the court is not at liberty to search for its meaning beyond
> the instrument itself." Globe Company v. Bank of Boston, 205 Va.
> 841, 848, 140 S.E.2d 629, 633 (1965). A contract is not deemed
> ambiguous merely because the parties disagree as to the meaning
> of the language they used to express their agreement.

Ross, 231 Va. at 212-13, 343 S.E.2d at 316. Furthermore, "courts cannot read into contracts

language which will add to or take away the meaning of words already contained therein."

Pysell, 263 Va. at 460, 559 S.E.2d at 678. "In reviewing the agreement, we must gather the

intent of the parties and the meaning of the language . . . from an examination of the entire

instrument, giving full effect to the words the parties actually used." Layne v. Henderson, 232

Va. 332, 337-38, 351 S.E.2d 18, 22 (1986).

On appeal, the Court reviews a trial court's interpretation of a contract *de novo*. Eure v. Norfolk Shipbuilding & Drydock Corp., 263 Va. 624, 631, 561 S.E.2d 663, 667 (2002). An appellate court has an equal opportunity to consider the words of the contract within the four corners of the instrument itself. Wilson, 227 Va. at 187-88, 313 S.E.2d at 398. The question whether contract language is ambiguous is one of law, not fact. Tuomala v. Regent Univ., 252 Va. 368, 374, 477 S.E.2d 501, 505 (1996). Thus, the trial court's conclusion regarding ambiguity is accorded no deference on appeal. Id.

In order to determine whether the trial court erred, we must review the stipulation in its entirety. Paragraph 2 waives equitable distribution "except as herein agreed . . . ." The trial court characterized this waiver paragraph as "boilerplate." Paragraph 19 then addresses equitable distribution: "The parties shall execute an addendum to the separation agreement to decide how to distribute their assets, including but not limited to all intangibles and all real estate owned by the parties . . . ."

We must read paragraph 2 and paragraph 19 so as to harmonize both, such that we do not ignore the provisions of either paragraph. "When two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done." Ames v. American Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934) (citing Phoenix Ins. Co. v. Shulman Co., 125 Va. 281, 291, 99 S.E. 602, 605 (1919)). We note that the parties never executed an addendum as mandated by paragraph 19. Absent a subsequent agreement purporting to distribute the marital share of the pension, paragraph 2 controls. There, the parties expressly and unequivocally waived their rights to share in each other's pensions. Cf. Nicholson v. Nicholson, 21 Va. App. 231, 240, 463 S.E.2d 334, 339 (1995) (noting, in the context of a case involving federal retirement benefits under the Foreign Service Act, that "[a] general waiver or

release" of the parties' rights to each other's property would "be sufficient [to waive the wife's statutory right to share in the retirement benefits] if, from the terms of the agreement, the parties' intent to include pension or retirement benefits is clear and unambiguous"). Thus, we conclude that wife waived her right to any share of husband's military pension and the trial court correctly denied her an award.

The trial court, however, did not base its ruling on waiver. Rather, the trial court denied an award "in light of the amount of support that [wife] is receiving." This is error.

Code § 20-107.3(F) states:

> The court shall determine the amount of any such monetary award without regard to maintenance and support awarded for either party or support for the minor children of both parties and shall, after or at the time of such determination and upon motion of either party, consider whether an order for support and maintenance of a spouse or children shall be entered or, if previously entered, whether such order shall be modified or vacated.

"The clear legislative intent embodied in [Code § 20-107.3] is to maintain an appropriate separation between considerations of . . . spousal support and considerations of an equitable division of marital wealth. This is appropriate because support and equitable distribution awards are based on entirely different considerations and serve entirely different purposes." Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987). "The 'equitable distribution' statute . . . is intended to recognize a marriage as a partnership and to provide a means to divide equitably the wealth accumulated during and by that partnership based on the monetary and non-monetary contributions of each spouse." Id. "Spousal support involves a legal duty flowing from one spouse to the other by virtue of the marital relationship. By contrast, a monetary award does not flow from any legal duty, but involves an adjustment of the equities, rights and interests of the parties in marital property." Brown v. Brown, 5 Va. App. 238, 246, 361 S.E.2d 364, 368 (1987).

The trial court considered the unitary support award in denying wife a marital share in husband's military pension. While we now affirm on the ground that wife waived her interest in equitable distribution, including any right to husband's pension, we note that this argument was made to the trial court by husband. We, therefore, find that the trial court reached the right result, but for the wrong reason. See Driscoll v. Commonwealth, 14 Va. App. 449, 452, 417 S.E.2d 312, 313 (1992) (holding that an appellate court may affirm the trial court when it reached the right result for the wrong reason when the right reason was raised at trial).

ATTORNEY'S FEES & COSTS

Trial

On appeal, wife contends the trial court erred in not awarding her attorney's fees as mandated by the stipulation agreement. She argues she retained counsel "to enforce or defend" the stipulation agreement, namely the support provisions of the agreement. Ultimately, the trial court found that husband owed $75,320 in delinquent support payments. Husband also initially attacked the validity of the agreement by placing the validity into dispute.

Husband counters wife's argument by contending that the attorneys' fees provision of the stipulation fails to state the *prevailing* party is entitled to the award. He concludes that the prevailing and non-prevailing parties are both entitled to an award. The trial court agreed, ruling that "[o]ne side is as bad as the other because you all did ask to have support increased," each party will pay their own attorneys' fees.

When a property settlement agreement provides for the payment of attorney's fees under a defined set of circumstances, the trial judge must enforce the agreement. Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994). "[W]e have never intimated that [Code § 20-109(C)] permits a trial judge to grant relief in derogation of the terms of the parties' agreement." Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005).

The stipulation expressly provides for an award of attorneys' fees and costs should either party "be required to retain counsel or initiate litigation to defend any provision of this agreement . . . ." Initially, husband contested the validity of the agreement, claiming that the agreement was unenforceable. In response, wife retained counsel "to enforce or defend" the validity of the agreement. After the September 10, 2004 hearing in which the trial court found the agreement to be enforceable, the parties no longer debated the validity of the agreement. Instead, the parties argued their respective interpretations of the agreement, specifically contesting the construction of the equitable distribution provisions and the modifiability of the unitary award.

Arguing for a particular interpretation of an admittedly valid agreement, such as modifiability of a unitary award, is not an endeavor to "enforce or defend" the agreement. Cf. O'Hara v. O'Hara, 45 Va. App. 788, 799, 613 S.E.2d 859, 865 (2005) (affirming the trial court's ruling that a provision in the settlement agreement providing for attorney's fees "in the event that either party defaults" was inapplicable because the case "involved[d] a proceeding to modify or terminate the spousal support award" and, thus, "was not a proceeding to enforce a default").

We find wife is entitled to an award of attorneys' fees for the time she expended preparing to and defending the agreement, until the trial court ruled the agreement to be valid on September 10, 2004. Additionally, wife is entitled to an award of attorney's fees based upon her litigation of the arrearage issue because, in seeking to recover the unpaid support awards, she was attempting to enforce the provision of the agreement. Cf. Sanford, 19 Va. App. at 249-50, 450 S.E.2d at 190 (holding that, where the parties' settlement agreement provided that a defaulting party would be responsible for the other party's attorneys' fees, and where the husband "defaulted in making his spousal support payments," the husband was "required under

the terms of the agreement" to pay his former wife's "legal expenses and costs to determine and enforce the support arrearage").

On the other hand, wife never contested the validity of the agreement. Husband, therefore, never had to retain counsel or initiate litigation to enforce or defend any provision of the agreement. Husband is not entitled to an award of attorney's fees.

### Appeal

Wife requests attorney's fees for matters relating to this appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Upon consideration of the entire record on appeal, we find that husband presented numerous questions that were not supported by law or evidence. See Gottlieb v. Gottlieb, 19 Va. App. 77, 95, 448 S.E.2d 666, 677 (1994). Therefore, we award attorney's fees to wife and remand this case to the trial court for determination of attorney's fees and costs incurred in responding to this appeal, including any attorney's fees and costs incurred at the remand hearing.

### CONCLUSION

We find that the trial court did not err in: (1) finding that the duration of husband's spousal support obligation is governed by Code § 20-109(D); (2) finding that the spousal support provision of the stipulation agreement is not modifiable by the court; (3) finding wife was not estopped from arguing that the agreement cannot be modified; (4) refusing to allow parol evidence in interpreting the duration of spousal and child support awards; (5) finding the agreement was not unconscionable; (6) finding that the parties had not reconciled; and (7) refusing to divide the marital share of husband's military pension. We find the trial court erred in refusing to award wife

attorney's fees.  We remand to the trial court for a determination of attorney's fees and costs to wife for enforcement of the agreement in the trial court, including fees and cost to defend wife's appeal and fees incurred at the remand hearing.

Affirmed in part, reversed in part, and remanded.

KELSEY, J., concurring, in part, and dissenting, in part.

On the spousal support issue, I accept the result reached by the majority opinion but cannot concur in its reasoning. With respect to the majority's award of attorney fees to wife, I must respectfully dissent.

(i) DURATION OF SPOUSAL SUPPORT

Code § 20-109(D) provides: "Unless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support." The majority understands this language to mean that a support award is implicitly *permanent* until death or remarriage. It seems to me just the opposite is true. Absent an agreement providing otherwise, a court-ordered support award is inherently *impermanent*. Its duration is necessarily indefinite — the result of being subject to judicial modification and even termination for any number of reasons short of death or remarriage. See Code § 20-109(A) (authorizing judicial modification or termination of support "as the circumstances may make proper").

The majority's reasoning treats the textual command "shall terminate," Code § 20-109(D), as if it meant "shall continue until." The "shall terminate" command of Code § 20-109(D), however, serves only as a "statutory bar" to support awards. Baldwin v. Baldwin, 44 Va. App. 93, 100-01, 603 S.E.2d 172, 175 (2004). It does not create a support obligation or continue it for any period of time. It merely specifies the default terminus. When death or remarriage occurs, the § 20-109(D) bar is absolute for non-contractual, court-ordered support. But it is only conditional for contractual support. The parties' agreement can continue support payments beyond the bar if the contractual language says so, assuming it passes the linguistic test of Hardesty v. Hardesty, 40 Va. App. 663, 667-70, 581 S.E.2d 213, 216-17 (2003) (*en banc*). For this reason, "when Code § 20-109's statutory bars do not apply, ordinary principles of

- 24 -

contract law do — and they, not <u>Hardesty</u>, determine the scope of the payee's right to receive spousal support and the payor's right to terminate it." <u>Baldwin</u>, 44 Va. App. at 100-01, 603 S.E.2d at 175.

Applying "ordinary principles of contract law," <u>id.</u>, I would simply say that a contractual term providing for monthly spousal support in a document self-styled a "partial settlement" could conceivably be ambiguous as to duration. But it only becomes truly ambiguous in any given case to the extent the competing contractual parties proffer two reasonable, but mutually exclusive, interpretations of the allegedly ambiguous provision. <u>See</u> <u>Vilseck v. Vilseck</u>, 45 Va. App. 581, 588-89, 612 S.E.2d 746, 749-50 (2005); <u>Smith v. Smith</u>, 43 Va. App. 279, 287-88, 597 S.E.2d 250, 254-55 (2004).

As footnote 1 of the majority opinion alludes, husband's attempt at proffering a "reasonable" interpretation was to say that parol evidence would prove that the spousal support was "intended" to help his wife "to pay certain debts" and would terminate when the couple's debts were discharged in bankruptcy. <u>See</u> J.A. 126, 312, No. 2124-05-1. "That's our interpretation," <u>id.</u> at 126, husband's counsel asserted in the trial court. He made the same argument on appeal. <u>See</u> Brief of Appellant 5, No. 2124-05-1 (claiming parol evidence would have established that "he understood the spousal support payment was tied to the debts").

Problem is, the written agreement itself renders husband's interpretation unreasonable on its face because another provision in the agreement states: "The dischargeability of debts to third-party creditors in bankruptcy shall have no effect on the obligations assumed hereunder for the benefit of the Wife and/or child which are in the nature of support . . . ." J.A. 290, No. 2124-05-1. Because parol evidence can be used only to clarify — but never contradict —

written contractual provisions, Vilseck, 45 Va. App. at 591, 612 S.E.2d at 751, the trial court did not erroneously refuse to admit parol evidence to clarify the alleged ambiguity.[3]

(ii) AWARD OF ATTORNEY FEES TO WIFE

The trial court denied attorney fees to both husband and wife, apparently reasoning that each had achieved partial (though roughly equal) success litigating their rights under the agreement. Wife successfully defended the agreement from husband's assertion of unconscionability. On the other hand, husband successfully defeated wife's attempt at increasing spousal support in derogation of the contractually fixed amount.

The majority reverses the trial court's decision, holding that wife (but not husband) should receive an award of attorney fees. The majority's reasoning turns on the specific language of the attorney fee provision giving each party a right to fees to the extent that party litigates in an effort to "enforce or defend" any provision of the agreement. The majority accepts the assumption implicit in the trial court's holding that wife would be entitled to receive fees in her successful effort in defending against husband's unconscionability challenge. But the majority rejects the corresponding assumption, also implicit in the trial court's holding, that wife's fees must be offset against husband's right to fees incurred in successfully defeating wife's challenge to the contractual limit placed on her right to spousal support.

"Arguing for a particular interpretation of an admittedly valid agreement," the majority asserts, "is not an endeavor to 'enforce or defend' the agreement." *Ante*, at 21. I do not

---

[3] As to the contractual waiver of equitable distribution, I accept the majority's application of the waiver provision (paragraph 2 of the "partial settlement") subject to an important caveat. Neither at trial nor on appeal did wife assert that the waiver provision should be disregarded as an "agreement to agree" unenforceable as a matter of law. See W.J. Schafer Assocs. v. Cordant, Inc., 254 Va. 514, 519, 493 S.E.2d 512, 515 (1997). Nor has she ever argued that the waiver provision remained subject to the condition precedent in paragraph 19 (concededly unmet under the facts of this case) that the parties enter into a later agreement to divide the marital assets. Had she made either argument, we would be confronted with a much different case.

- 26 -

understand this distinction. A contractual party always litigates in an effort to *enforce* his own, not his opponent's, interpretation of the agreement. Courts declare the breaching party in breach (thus subject to coercive judicial enforcement) not only when that party has mistakenly treated the contract as unenforceable, but also when the party has breached a concededly enforceable contract that he has conveniently (but no less mistakenly) interpreted to relieve him of the duty in the first place.

Contractual attorney fee provisions, therefore, necessarily apply to efforts to convince a court that the contractual duty exists and the other party has breached this duty under the false assumption (based upon a misinterpretation of the agreement) that no such duty existed. See Pellegrin v. Pellegrin, 31 Va. App. 753, 767-68, 525 S.E.2d 611, 618 (2000) (affirming fee award under a contractual provision authorizing fees for the "successful enforcement of any of the provisions of the agreement" where wife successfully defeated husband's mistaken interpretation of the separation agreement).[4]

In this case, wife initiated the litigation over the spousal support issue by seeking "to have support increased" in direct derogation of the amount prescribed in the agreement. While she did not challenge the validity of the agreement, she did not need to. She chose instead to simply ignore it. Rejecting this litigation strategy, the trial court apparently viewed husband's expenditure of fees on this topic to be in rough equipoise with wife's rightful claim to fees on other topics. Because neither party on appeal has shown why this setoff (however inexact it might be) should be set aside, I think it best to leave the matter of fees right where the trial court

---

[4] See also Cangiano v. LSH Building Co., 271 Va. 171, 184, 623 S.E.2d 889, 897 (2006) (applying an attorney fee provision, providing for fees to a party successfully "enforcing this Agreement" to a dispute that involved both the validity of the agreement and competing interpretations of it); Sanford v. Sanford, 19 Va. App. 241, 249, 450 S.E.2d 185, 190 (1994) (awarding fees pursuant to clause authorizing fees for "successfully enforcing the terms of the separation agreement" when dispute involved amount of contractual spousal support owed).

left it — with each party's request for fees effectively canceling the other's out due to their inconsistent and only partially successful efforts at enforcing and defending their respective interpretations of the agreement.

* * * * *

In sum, I reach the same result as the majority concerning the duration of spousal support, but for different reasons. On the attorney fee issue, I believe the trial court's ruling should not be disturbed.[5]

---

[5] For similar reasons, I likewise dissent from the majority's award of attorney fees on appeal. The attorney fee provision of the agreement, not the discretionary authority of appellate courts to award fees under O'Loughlin v. O'Loughlin, 23 Va. App. 690, 479 S.E.2d 98 (1996), should control this decision. See Rutledge v. Rutledge, 45 Va. App. 56, 61-63, 608 S.E.2d 504, 506-08 (2005) (holding that contractual provisions governing attorney fees supersede court's inherent discretionary power to award fees). Under the Courtney agreement, each party is entitled to fees incurred to enforce or defend their contractual rights — rights that do not disappear simply because the case is on appeal. The contractual fee provision thus places us in an analogous position as the trial court. On appeal, husband successfully enforced the waiver provision of paragraph 2. Wife, on the other hand, successfully defended her right to contractual spousal support. Our ruling should require the trial court to determine on remand the respective fees attributable to each party's successful litigation of their contractual rights on appeal. See Sanford, 19 Va. App. at 250, 450 S.E.2d at 190 (remanding to the trial court to award attorney fees for both trial and appellate fees where agreement provided for "costs incurred in enforcing the terms" of the agreement). It may be that each party incurred about the same amount of qualifying fees, resulting in a net award to neither party. Or it may be that the setoff of one party's fees against the other's still leaves some overage yet to be paid. Either way, that determination should be made on remand.