COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, McClanahan and Senior Judge Willis
Argued at Chesapeake, Virginia


TERRI COLBY BARR

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0464-06-1              JUDGE D. ARTHUR KELSEY
                                                      NOVEMBER 28, 2006
MARK H. BARR


              FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                           Charles E. Poston, Judge

              Peter V. Chiusano (Kimberly L. Stegall; Willcox & Savage,
              P.C., on briefs), for appellant.

              Barry Kantor (Christie, Kantor, Griffin & Smith, P.C., on
              brief), for appellee.


       On four grounds, Terri Colby Barr appeals the entry of a final divorce decree in this

case.  The language of the final decree, she contends, demonstrates that the trial court erred by

           ▪   misinterpreting a settlement agreement she entered into with her
               husband, Mark H. Barr,

           ▪   failing to declare the agreement unconscionable,

           ▪   misconstruing the agreement as a full, rather than partial,
               settlement of the contested equitable distribution issues, and

           ▪   mischaracterizing the contractual spousal support obligation as
               nonmodifiable.

Finding no merit in these assertions, we affirm.

                                            I.

       The parties married in 1972 and separated in 2002.  Husband filed for a divorce, and wife

filed a cross-bill seeking the same end.  While the divorce proceeding was pending, husband

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

voluntarily paid wife's monthly expenses.  The trial court entered no *pendente lite* orders.  With the parties' consent, the trial court referred the case to a commissioner in chancery for an evidentiary hearing.

The commissioner's hearing lasted eight days.  On the last day, the parties entered into a handwritten settlement agreement addressing support and equitable distribution issues then pending before the commissioner.  Among other things, they agreed wife would live in the marital home and husband would "reasonably maintain the marital home and property until the mortgage is paid or Terri remarries whichever first occurs."  The spousal support provision required husband to pay wife $5,000 a month for a little over eight years, "commencing" September 1, 2005, and paralleling "the remaining term" of the mortgage.  A separate clause stated:

> Mark agrees to assume all debt of the Parties ~~as of the date of this Agreement~~ and ^*Terri's normal monthly expenses as of September 1, 2005*^ except for the mortgage on the marital residence and the "second" mortgage due to Shelia Colby.  Terri will be responsible for paying the "second" mortgage to Sheila Colby.

The crossed-out language, as well as the inserted italicized language, bore the initials of both husband and wife.  The commissioner read the agreement into the record and confirmed the parties' consent to its terms.

The commissioner reported the agreement to the trial court and recommended that it be incorporated into the final divorce decree. Wife filed an objection to the commissioner's report and sought to set aside the agreement.  She later withdrew this objection.  The court then issued a scheduling order, entitled "Notice to Submit Final Decree," noting the absence of any objections to the commissioner's report and directing the parties to submit a final decree for entry.

Wife responded by filing a "Motion to Enforce Agreement," asserting husband had failed to pay her "monthly household expenses" as the settlement required. The motion also argued that, "to the extent" husband interpreted the settlement agreement otherwise, "there was no 'meeting of the minds' and there is no agreement." Shortly thereafter, wife filed a second motion entitled "Motion to Enforce Agreement and Request for Reimbursement." This motion again asserted her entitlement to "monthly household expenses" and added a request for reimbursement of those expenses she had paid out of her own pocket.

At the hearing in the trial court, wife objected to husband's proposed draft of a final decree claiming it did not "track and mirror the actual language of the agreement." "It's not necessarily the decree," wife's counsel explained, "it's how the parties are now interpreting that agreement, that's the issue." The disputed interpretation centered on the provision requiring husband to "assume all debt of the Parties and Terri's normal monthly expenses *as of* September 1, 2005." (Emphasis added). Husband interpreted that provision to require that he pay all accrued, but unpaid, debt and monthly expenses existing on September 1, 2005. Wife agreed the provision required husband to pay all accrued, unpaid debt as of September 1, but contended her unspecified monthly expenses must also be paid for an indefinite period *commencing* September 1 and continuing indefinitely thereafter.

In support of his interpretation, husband pointed out that he had been paying wife's monthly expenses since their separation without a *pendente lite* order requiring him to do so. Entered into on August 2, 2005, the settlement agreement required husband to bring all unpaid debt and expenses current as of September 1, 2005. Beginning on September 1, 2005, husband noted, the agreement required him to pay support to wife in the amount of $5,000 a month for just over eight years. In contrast to the debt-and-expenses provision, the support provision

expressly required the $5,000 monthly payments for an agreed period "commencing" on September 1, 2005.

For her part, wife claimed the text of the debt-and-expenses provision unambiguously required husband to pay her unspecified monthly expenses in perpetuity. The phrase "as of" really meant "commencing," she argued. Thus, she interpreted the payment obligation to begin on September 1, 2005, and to continue without any ending date. Wife's counsel also argued that if both parties interpreted the provision differently, then "there is no meeting of the minds and there can't be any contract."

The trial court agreed with husband's interpretation of the debt-and-expenses provision, reading it as an unambiguous expression of the parties' intent that husband pay all accrued, unpaid debt and monthly expenses "as of" (that is, calculated on) September 1, 2005. The trial court also observed that, "Just because the parties disagree doesn't mean there is not a meeting of the minds." The trial court then entered husband's draft of the proposed decree and denied wife's motions seeking to enforce the provision as she interpreted it.

II.

A.   THE "AS OF" INTERPRETATION

On appeal, wife argues that the trial court erred as a matter of law because the plain meaning of the unambiguous debt-and-expenses provision can only be interpreted as she proposes. We disagree.

Under settled contract law principles, the dispute over the debt-and-expenses provision presents three decisional alternatives: the plain meaning of the provision either clearly favors wife's interpretation, clearly favors husband's interpretation, or clearly favors neither interpretation because its ambiguous language can be reasonably interpreted in more than one

way.  See generally Vilseck v. Vilseck, 45 Va. App. 581, 588-91, 612 S.E.2d 746, 749-50 (2005); Smith v. Smith, 43 Va. App. 279, 287-88, 597 S.E.2d 250, 254-55 (2004).  Of these three, the least defensible interpretation is the one advocated by wife.

The phrase "as of" usually means "on" a certain date or "at" a certain time.  See Black's Law Dictionary 109 (7th ed. 1999) ("On; at" — "to signify an effective legal date"); American Heritage Dictionary 51 (4th ed. 2001) ("On; at").  The phrase does not necessarily denote "on" a certain date or "at" a certain time and *continuing indefinitely thereafter*.  Syntactic context may supply that additional durational connotation.  But, standing alone, the phrase "as of" does not require it.  The mere use of the "as of" phrase, therefore, does not unambiguously favor wife's interpretation and disfavor husband's contrary view.

The larger contractual context likewise fails to provide an unambiguous durational connotation for the debt-and-expenses obligation.  As husband points out, the support provision identifies the $5,000 monthly payment as a continuing obligation "commencing" September 1, 2005.  Yet this word is conspicuously absent from the debt-and-expenses provision.  Husband also calls attention to the fact that the "monthly expenses" portion of the debt-and-expenses provision was a negotiated interlineation added to a clause addressing only accrued, unpaid marital debt — implying that the additional language was likewise referring to past monthly expenses wife had incurred "as of" a certain date, rather than her ongoing expenses beginning on that date and continuing indefinitely thereafter.  The contextual whole, therefore, does not provide the kind of textual clarity necessary for wife's assertion that the plain meaning of the debt-and-expenses provision unambiguously creates an indefinite duration.

We need not address whether the "as of" phrase can bear equally the interpretative weight placed on it by the competing views advocated by wife and husband — thus making the

trial court's error not so much its final result but that, in reaching it, the court failed to appreciate that the ambiguous nature of the provision required the consideration of extrinsic evidence. See, e.g., Vilseck, 45 Va. App. at 589-90, 612 S.E.2d at 750 (finding such an argument persuasive).[1] Wife does not make that argument on appeal. For appellate purposes, the only question presented is whether the plain meaning of the debt-and-expenses provision, as a matter of law, simultaneously endorses wife's interpretation and excludes husband's interpretation. We hold it does not.

### B.   UNCONSCIONABILITY — "GROSS DISPARITY"

Wife asserts the settlement agreement should be deemed unconscionable because of the "gross disparity" of the agreed-upon asset distribution, particularly when coupled with the trial court's interpretation of the debt-and-expenses provision. Wife points to nothing in the record, however, demonstrating by "clear and convincing evidence," Shenk v. Shenk, 39 Va. App. 161, 177, 571 S.E.2d 896, 904 (2002), that the disparity in the division of assets was accompanied by husband's "overreaching or oppressive influences." Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005). Without such a showing, the agreement — no matter how the debt-and-expenses provision is interpreted — cannot be disaffirmed as unconscionable. Id.

### C.   INCOMPLETENESS OF SETTLEMENT AGREEMENT

Wife also argues that the agreement was only a partial settlement of the equitable distribution issues. The trial court's final decree confirming the agreement and denying any

---

[1] Given our ruling, we also do not decide whether wife made a sufficient proffer to enable this issue to be decided on appeal. See generally Campbell v. Corpening, 230 Va. 45, 48, 334 S.E.2d 589, 591 (1985) (holding that party seeking an appellate remand for consideration of "parol evidence" must "make a proffer" of such evidence).

further relief, she contends, failed to address all the contested equitable distribution issues before the court. As she concedes on appeal, however, wife did not specifically raise this argument during the hearing before the trial court.[2] Because the trial court never ruled on the issue, we cannot do so for the first time on appeal. The purpose of the contemporaneous objection rule is to "afford the trial court the ability to address an issue. If that opportunity is not presented to the trial court, there is no ruling by the trial court on the issue, and thus no basis for review or action by this Court on appeal." Riverside Hospital, Inc. v. Johnson, 272 Va. ___, ___, ___ S.E.2d ___, ___ (2006); see also Riner v. Commonwealth, 268 Va. 296, 325, 601 S.E.2d 555, 571-72 (2004) (holding that failure to request a ruling from the trial court, by itself, waives the issue on appeal).[3]

### D.  MODIFIABILITY OF CONTRACTUAL SUPPORT

Finally, wife asserts that the final divorce decree erroneously characterized the contractual support as nonmodifiable. Assuming *arguendo* wife preserved this issue in the trial court, she failed to provide an adequate legal analysis of the topic to make it a legitimate debate on appeal. Her briefs do not address any legal precedent on the subject or attempt to develop an

---

[2] At oral argument on appeal, wife's counsel conceded that "with respect to ED and continuing ED" there was no "specific objection made, 'Judge, you cannot enter this [final decree] because there are other assets that have to be divided.'"

[3] At the final hearing, the trial court entered the divorce decree and directed wife's counsel to "note [his] exceptions" next to his endorsement of the decree — referring, no doubt, to those specific objections raised and ruled upon at the hearing. Eight days later, wife's counsel filed in the clerk's office a document entitled "Mrs. Barr's Objections to the Court's Ruling and Decree of Divorce." Included among these objections were several that had never been raised at the final hearing. The record contains no indication that wife's counsel brought these new objections to the court's attention or sought a post-hearing ruling from the court on them. As a means of preserving these issues for appeal, these after-the-fact objections are wholly ineffectual. Only objections raised "at the time of the ruling" satisfy Rule 5A:18.

- 7 -

analytically principled basis for the relief she seeks on appeal.[4]  Challenges to lower court decisions "unsupported by argument, authority, or citations to the record do not merit appellate consideration."  Epps v. Commonwealth, 47 Va. App. 687, 718, 626 S.E.2d 912, 926-27 (2006) (*en banc*); Boyd v. County of Henrico, 42 Va. App. 495, 506 n.6, 592 S.E.2d 768, 773 n.6 (2004) (*en banc*).

III.

We affirm the trial court's interpretation of the property settlement agreement and find no error in the entry of the final divorce decree.

Affirmed.

---

[4] See, e.g., Newman v. Newman, 42 Va. App. 557, 568-69, 593 S.E.2d 533, 539 (2004) (*en banc*) ("Absent equitable grounds warranting rescission, a contract cannot be judicially modified or terminated at the unilateral request of a contract party unless the agreement expressly authorizes such relief."); see also Baldwin v. Baldwin, 44 Va. App. 93, 98-99, 603 S.E.2d 172, 174 (2004); Smith v. Smith, 41 Va. App. 742, 747, 589 S.E.2d 439, 441 (2003).